# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

ZOLETTA DARLEEN BRAY,     )
            )
      **Plaintiff,**     )
            )
**v.**           )     **Case No.  CIV-12-449-SPS**
            )
**CAROLYN W. COLVIN,**     )
**Acting Commissioner of the Social**     )
**Security Administration,**[1]     )
            )
      **Defendant.**     )

## OPINION AND ORDER

The claimant Zoletta Darleen Bray requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g).  The claimant appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled.  As discussed below, the Commissioner's decision is REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A).  A claimant is disabled under the Social Security Act "if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age,

---

[1] On February 14, 2013, Carolyn Colvin became the Acting Commissioner of Social Security.  In accordance with Fed. R. Civ. P. 25(d), Ms. Colvin is substituted for Michael J. Astrue as the Defendant in this action.

education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on April 17, 1962, and was forty-nine years old at the time of the administrative hearing (Tr. 37, 136). She earned her GED and has no past relevant work (Tr. 30). The claimant initially alleged that she has been unable to work since February 4, 2006, but amended her onset date to October 15, 2008 at the administrative hearing (Tr. 43). The claimant alleges that she is unable to work due to diabetes and severe fibromyalgia (Tr. 159).

## Procedural History

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-05, and supplemental security insurance payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on December 10, 2009. Her applications were denied. ALJ Michael A. Kirkpatrick held an administrative hearing and found that the claimant was not disabled in a written opinion dated August 4, 2011 (Tr. 19-32). The Appeals Council denied review, so the ALJ's written opinion is the final decision of the Commissioner for purposes of appeal. *See* 20 C.F.R. §§ 404.1481, 416.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that

the claimant retained the residual functional capacity ("RFC") to perform a wide range of medium work as defined by 20 C.F.R. §§ 404.1567(c), 416.967(c), *i. e.*, she can lift/carry up to fifty pounds occasionally and twenty-five pounds frequently, and stand/sit/walk for up to six hours in an eight-hour workday, stoop only occasionally (Tr. 23). The claimant could perform only simple, routine, unskilled tasks requiring no interaction with the general public (Tr. 23). The ALJ concluded that although the claimant had no past relevant work to which she could return, she was nevertheless not disabled because there was other work she could perform, *i. e.*, assembler, cleaner/polisher, printed circuit board screener, press machine operator, dry cleaner helper, and automatic machine attendant (Tr. 31).

## Review

The claimant contends that the ALJ erred: (i) by failing to properly analyze the opinion of her treating physician Dr. Theresa Farrow; (ii) by failing to properly analyze her credibility; and (iii) by failing to perform a proper step five analysis. Because the ALJ did fail to properly analyze the opinion of Dr. Farrow, and other physician opinion evidence as well, the decision of the Commissioner must be reversed and the case remanded for further proceedings.

The claimant began receiving mental health treatment at Carl Albert Community Mental Health Center (CACMHC) in November 2008. At that time, she complained of depression, low motivation, crying spells, and loss of appetite, for which Lexapro was prescribed (Tr. 224). The claimant's mood swings continued and she was unsure that her

medication was helping (Tr. 223). In July 2009, the claimant complained of depression and anxiety and was prescribed Paxil (Tr. 231). At her next appointment, the claimant complained that her medicine was not working, and Wellbutrin was prescribed (Tr. 230). Records from CACMHC also indicated the claimant had tried Paxil, Prozac, Wellbutrin, and Zoloft in an attempt to treat her depression (Tr. 226).

The claimant received inpatient mental health treatment at CACMHC in October 2010 for suicidal/homicidal ideation and delusions (Tr. 291). The claimant was noted to have been selling aluminum scrap to buy solar kits "because she was thinking there were going to be societal problems that would lead to no electricity available" (Tr. 291). The claimant complained of sleeping excessively, social withdrawal, frequent crying, visual hallucinations, and increasing suicidal thoughts (Tr. 291). During the mental status examination, the claimant was noted to display a depressed affect, constricted speech, nihilistic thoughts, and visual hallucinations (Tr. 293). Her GAF was assessed to be a 35 (Tr. 293). The claimant remained hospitalized for one week, and was discharged because she was free of suicidal and homicidal ideations (Tr. 288). Her final diagnoses were bipolar disorder, manic phase, and her GAF upon discharge was assessed to be a 60 (Tr. 289). The claimant continued receiving treatment at CACMHC every 2-3 months (Tr. 284), and her problem in March 2011 was noted to be psychosis and hallucinations (Tr. 320). The claimant saw Dr. Theresa Farrow, M.D. on April 28, 2011 at which time the claimant complained of continued depression, anxiety, mild hallucinations, and paranoia (Tr. 319). Her affect and mood were noted to be anxious/fearful, depressed/sad, and

medications were noted to be partially effective (Tr. 319). In July 2011, Dr. Farrow noted that the claimant continued to do poorly, having visual hallucinations and panic attacks (Tr. 316). Dr. Farrow noted that the claimant's medications were partially effective, and wrote that the claimant was "unable to work and has ongoing problems interfering with her functioning due to the many side effects she has had to the medications" (Tr. 316).

Dr. Farrow completed a Treating Source Statement on July 26, 2011 in which she opined that the claimant was severely limited in the following functional categories: (i) maintaining attention for two hour segments; (ii) maintaining regular attendance and being punctual within customary, usually strict tolerances; (iii) sustaining an ordinary routine without special supervision; (iv) working in coordination with or proximity to others without being unduly restricted; (v) completing a normal workday and workweek without interruptions from psychologically based symptoms; (vi) performing at a consistent pace without an unreasonable number and length of rest periods; (vii) getting along with co-worker or peers without unduly distracting them or exhibiting behavioral extremes; (viii) responding appropriately to changes in a routine work setting; (ix) dealing with normal work stress; (x) understanding, remembering and carrying out detailed instructions; (xi) setting realistic goals or making plans independently of others; (xii) dealing with stress of semiskilled and skilled work; (xiii) interacting appropriately with the general public; (xiv) traveling in unfamiliar places; and (xv) using public transportation (Tr. 321-22).

State agency physician Dr. Kathleen Ward completed a mental status examination on March 16, 2010 (Tr. 235-38). The claimant reported mood swings, intermittent suicidal thoughts, and bathing only once a week (Tr. 235). The claimant related that she had attempted suicide by taking too many Xanax pills, and that she experienced problems with medication side effects (Tr. 236). Dr. Ward noted that the claimant was disheveled in appearance, "quite late for her appointment[,]" and had a depressed demeanor (Tr. 236-37). Dr. Ward's diagnostic impression was that "there [was] probably a psychological component to her experience of pain and perhaps to her difficulty tolerating psychiatric medication" and she did exhibit "some depression and personality issues" (Tr. 237). Dr. Ward's diagnoses included major depressive disorder, borderline personality traits (Tr. 237).

State agency physician Dr. Janice B. Smith, Ph.D. reviewed the claimant's medical records and completed a Psychiatric Review Technique (PRT) form. She found that the claimant's symptoms fell under the umbrellas of Affective Disorders and Personality Disorders (Tr. 253, 256, 260). Dr. Smith found that the claimant had moderate limitations in activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace (Tr. 263). Dr. Smith also completed a Mental Residual Functional Capacity Assessment in which she opined that the claimant was markedly limited in the ability to understand and remember detailed instructions, ability to carry out detailed instructions, and ability to interact appropriately with the general public (Tr. 249-50). Her written comments indicate that the claimant could

perform simple one and two-step tasks under routine supervision, complete a normal workweek "in a job that does not require a lot of physical energy[,]" but could not relate to the general public (Tr. 251).

State agency physician Dr. John Pataki, M.D. reviewed the claimant's medical records and completed a Physical Residual Functional Capacity Assessment. He opined that the claimant could perform medium work, *i. e.*, occasionally lift/carry up to 50 pounds, frequently lift/carry up to 25 pounds, stand/walk and sit for six hours, respectively, in an eight-hour workday (Tr. 268). In addition, Dr. Pataki found that the claimant could only occasionally stoop and frequently climb ramps, stairs, ladders, ropes, and scaffolds, balance, kneel, crouch, and crawl and noted those postural limitations were due to "pain limits" (Tr. 269).

The claimant contends, inter alia, that the ALJ failed to properly analyze the opinion provided by Dr. Farrow as to her mental limitations. Medical opinions from a treating physician such as Dr. Farrow are entitled to controlling weight if they are "'well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record.'" *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). Even if a treating physician's opinions are not entitled to controlling weight, the ALJ must nevertheless determine the proper weight to give them by analyzing the factors set forth in 20 C.F.R. § 404.1527. *Id.* at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still

entitled to deference and must be weighed using all of the factors provided in [§] 404.1527.'"), *quoting Watkins*, 350 F.3d at 1300. The pertinent factors are: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins,* 350 F.3d at 1300-01 [quotation marks omitted], *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). Finally, if the ALJ decides to reject a treating physician's opinion entirely, "he must . . . give specific, legitimate reasons for doing so[,]" *id*. at 1301 [quotation marks omitted; citation omitted], so it is "clear to any subsequent reviewers the weight [he] gave to the treating source's medical opinion and the reasons for that weight." *Id*. at 1300.

In this case, the ALJ assigned little weight to Dr. Farrow's opinion and gave these reasons: (i) the opinion was not supported by objective medical evidence or Dr. Farrow's own treatment notes; (ii) the short duration of the treating physician relationship between the claimant and Dr. Farrow; and (iii) the claimant received relatively routine care (Tr. 26-29). While the Court notes that the consideration given to the duration of the relationship between the claimant and Dr. Farrow was appropriate, the ALJ's other reasons for rejecting Dr. Farrow's opinion are not legally sound. First, the ALJ's finding

that the opinion was not based on objective medical evidence fails to take into account that "[t]he practice of psychology is necessarily dependent, at least in part, on a patient's subjective statements." *Thomas v. Barnhart*, 147 Fed. Appx. 755, 759 (10th Cir. 2005). *See also Wise v. Barnhart*, 129 Fed. Appx. 443, 447 (10th Cir. 2005) ("[A] psychological opinion does not need to be based on 'tests;' those findings can be based on 'observed signs and symptoms.' Dr. Houston's observations of Ms. Wise do constitute specific medical findings."), *citing Robinson*, 366 F.3d at 1083, *citing* 20 C.F.R. subpt. P, app. 1 § 12.00(B). Second, in noting that the claimant had only "relatively routine care," the ALJ failed to mention that the claimant received a full week of inpatient treatment for suicidal ideation as well as regular treatment for depression and anxiety since at least 2008 (Tr. 224). Finally, the notation by the ALJ that "Dr. Farrow was apparently just parroting claimant's allegations" is a wholly inappropriate reason for rejecting a physician opinion. *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) ("In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation or lay opinion*.").

Although the claimant did not raise the issue, it should be noted that the ALJ also failed to properly analyze the opinions of the state agency physician Dr. Smith, *i. e.*, the ALJ failed to explain why he adopted some (but not all) of the mental limitations she found applicable to the claimant. Social Security Ruling 96-6p indicates that the ALJ

"must consider and evaluate any assessment of the individual's RFC by a State agency medical or psychological consultant and by other program physicians and psychologists." 1996 WL 374180, at *4. These opinions are to be treated as medical opinions from non-examining sources. *Id*. at *2. Although not bound by the determination of a state agency physician, an ALJ may not simply ignore it and must explain the weight it is given in the decision. *Id*. *See also Valdez v. Barnhart*, 62 Fed. Appx. 838, 841 (10th Cir. 2003) ("If an ALJ intends to rely on a non-examining source's opinion, he must explain the weight he is giving it."), *citing* 20 C.F.R. § 416.927(f)(2)(ii). In this case, the ALJ assigned "great weight" to Dr. Smith's opinion but gave no explanation for apparently rejecting her finding that the claimant could perform only simple one and two-step tasks and could only complete a normal workweek "in a job that does not require a lot of physical energy[,]" (Tr. 251). *See, e. g., Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) ("[T]he ALJ should have explained why he rejected four of the moderate restrictions on Dr. Rawlings' RFC assessment while appearing to adopt the others. An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability . . . [T]he ALJ did not state that any evidence conflicted with Dr. Rawlings' opinion or mental RFC assessment. So it is simply unexplained why the ALJ adopted some of Dr. Rawlings' restrictions but not others.").

Because the ALJ failed to properly analyze medical evidence as discussed above, the decision of the Commissioner must be reversed and the case remanded for a proper

analysis.  If such analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work she can perform, if any, and ultimately whether she is disabled.

## Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ and the decision of the Commissioner is therefore not supported by substantial evidence.   Accordingly, the ruling of the Commissioner of the Social Security Administration is REVERSED and the case REMANDED for further proceedings not inconsistent herewith.

**DATED** this 31st day of March, 2014.

_____
Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma